M. RANDALL OPPENHEIMER (S.B. #77649)
roppenheimer@omm.com
DAWN SESTITO (S.B. #214011)
dsestito@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407

JONATHAN A. HUNTER (*Pro hac vice forthcoming*)
jahunter@liskow.com
STEPHEN W. WIEGAND (*Pro hac vice forthcoming*)
swwiegand@liskow.com
CARSON M. HADDOW (*Pro hac vice forthcoming*)
chaddow@liskow.com
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139
Telephone:  (504) 581-7979
Facsimile:   (504) 556-4108

*Attorneys for Applicant for Intervention*
EXXON MOBIL CORPORATION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ex rel. KAMALA D. HARRIS, ATTORNEY GENERAL; CALIFORNIA COASTAL COMMISSION,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; BUREAU OF OCEAN ENERGY MANAGEMENT; BUREAU OF SAFETY AND ENVIRONMENTAL ENFORCEMENT; RICHARD YARDE, Regional Supervisor, Bureau of Ocean Energy Management; and DAVID FISH**,** Acting Chief, | Case No. 2:16-CV-09352-PSG-FFMx<br><br>**NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE ON BEHALF OF DEFENDANT-INTERVENOR EXXON MOBIL CORPORATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:  April 17, 2017<br>Hearing Time:  1:30 p.m.<br>Location:          Courtroom 6A<br>Judge:             Hon. Philip S. Gutierrez |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Environmental Compliance Division,
Bureau of Safety and Environmental
Enforcement,

                              Defendants.

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 17, 2017, at 1:30 p.m., or as soon thereafter as counsel may be heard, before the Hon. Philip S. Gutierrez, in the above-titled Court, Courtroom 6A of the First Street Federal Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Exxon Mobil Corporation ("ExxonMobil") will, and hereby does, move for leave to intervene as of right as a Defendant based on its legally protected rights in the above-captioned matter pursuant to Federal Rule of Civil Procedure 24(a).  Alternatively, ExxonMobil moves for permission to intervene pursuant to Federal Rule of Civil Procedure 24(b).

This Motion is based on this Notice of Motion and Motion and the attached Memorandum of Points and Authorities, the Declaration of Ken Dowd, the Proposed Answer of ExxonMobil, the argument of counsel, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the hearing on this Motion or before the Court's decision.

/ / /

/ / /

/ / /

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 30, 2017.  Defendants take no position on this Motion, and Plaintiffs do not oppose this motion.

DATED:  February 8, 2017.

Respectfully submitted,

M. RANDALL OPPENHEIMER
DAWN SESTITO
O'MELVENY & MYERS LLP

/s/ Dawn Sestito
Dawn Sestito
**Attorneys for Exxon Mobil Corporation**

**Pro Hac Vice Application Forthcoming:**
Jonathan A. Hunter
Stephen W. Wiegand
Carson M. Haddow
Liskow & Lewis
701 Poydras Street, 50th Floor
New Orleans, LA 70139
Telephone:   (504) 556-4131
Facsimile:    (504) 556-4108

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. BACKGROUND AND PROCEDURAL HISTORY ........................................ 2

III. LEGAL ARGUMENT ..................................................................................... 5

    A. ExxonMobil Satisfies the Criteria for Intervention as of Right ............ 5

        1. ExxonMobil Has a Significant, Protectable Interest in the Litigation .......................................................................................... 7

        2. ExxonMobil's Interests Will Be Impaired If Intervention Is Denied .......................................................................................... 8

        3. The Existing Parties Do Not Adequately Represent ExxonMobil's Interests ............................................................. 11

        4. ExxonMobil's Motion for Intervention Is Timely. .................. 15

    B. In the Alternative, ExxonMobil Should Be Permitted to Intervene Pursuant to Federal Rule of Civil Procedure 24(b). ............ 16

IV. CONCLUSION .............................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) .............................................................................. 11

*Bark v. Northrup*,
2013 U.S. Dist. LEXIS 177257 (D. Or. Nov. 18, 2013) ..................................... 12

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ............................................................................. 7, 9

*Center for Biological Diversity v. Bureau of Ocean Energy Management*, No. 2:16-cv-8473-PSG-FFM (C.D. Cal. Nov. 15, 2016) ............................................................................................................... 5

*Citizens for Balanced Use v. Mont. Wilderness Association*,
647 F.3d 893 (9th Cir. 2011) ........................................................................ passim

*Conservation Law Found. of New England v. Mosbacher*,
966 F.2d 39 (1st Cir. 1992) ................................................................................. 10

*Ctr. for Biological Diversity v. Salazar*, Case No. 10-816, (D.D.C. July 22, 2010, Nov. 2, 2010) ................................................................................... 14

*Defenders of Wildlife v. Bureau of Ocean Energy Mgmt., Regulation, & Enforcement*, Case No. 10-0254, (S.D. Ala. Aug. 9, 2010, Dec. 9, 2010, June 22, 2011, Sept. 27, 2011) ............................................... 11, 14

*Environmental Defense Center v. Bureau of Safety and Environmental Enforcement, et al.* (C.D. Cal. Case No. 2:14-cv-09281-PSG-FFM) .......... passim

*Gulf Restoration Network v. Salazar*,
Case No. 10-60411 (5th Cir. 2010) .................................................................... 14

*John Doe #1 v. Glickman*,
256 F.3d 371 (5th Cir. 2001) .............................................................................. 13

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998) ............................................................................... 12

*Native Vill. of Chickaloon v. NMFS*, Case No. 12-102, (D. Alaska Aug. 3, 2012, Aug. 24, 2012) .................................................................... 10

*Native Vill. of Point Hope v. Kempthorne*, Case No. 08-00004, (D. Alaska Apr. 18, 2008) ...................................................................... 10

*Native Vill. of Point Hope v. Salazar*, Case No. 09-73942, (9th Cir. Mar. 2, 2010) ...................................................................................... 10

*Nev. Ass'n of Counties v. U.S. Dep't of the Interior*,
2014 U.S. Dist. LEXIS 46225 (D. Nev. Apr. 2, 2014) ....................................... 15

**TABLE OF AUTHORITIES**
(continued)

Page

*Nw. Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) ...........................................................11, 13

*Oceana v. BOEM*, Case No. 12-981, (D.D.C. Sept. 13, 2012, Oct. 22,
    2012, Dec. 4, 2012) ...........................................................................10

*Snowlands Network Winter Wildlands Alliance & Ctr. for Biological
    Diversity v. U.S. Forest Serv.*,
    2012 U.S. Dist. LEXIS 144073 (E.D. Cal. Oct. 4, 2012) ...................12

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ...........................................................................11

*United States v. City of L.A.*, 288 F.3d 391 (9th Cir. 2002) ........................6, 7, 8, 16

*United States v. Washington*, 86 F.3d 1499 (9th Cir. 1996)................................6, 15

*WildEarth Guardians v. U.S. Forest Serv.*,
    573 F.3d 992 (10th Cir. 2009)...........................................................12

*Wilderness Soc'y v. Wisely*,
    524 F. Supp. 2d 1285 (D. Colo. 2007) ...............................................17

*Wilderness Society v. United States Forest Service*,
    630 F.3d 1173 (9th Cir. 2011)...........................................................6, 7

## STATUTES

16 U.S.C. §§ 1451-66 .........................................................................1, 8, 16

42 U.S.C. §§ 4321-4370h ...................................................................1, 8, 16

5 U.S.C. §§ 551-559, 701-706............................................................1, 3, 8, 16

## RULES

Fed. R. Civ. P. 24(a) ...........................................................................2, 5, 7

Fed. R. Civ. P. 24(b)...........................................................................2, 16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, Exxon Mobil Corporation ("ExxonMobil") seeks leave to intervene as a Defendant, by right, in the above-captioned proceeding.

This lawsuit challenges the Programmatic Environmental Assessment of the Use of Well Stimulation Treatments on the Southern California Outer Continental Shelf ("PEA") and related Finding of No Significant Impact ("FONSI") issued by the Bureau of Ocean Energy Management ("BOEM") and the Bureau of Safety and Environmental Enforcement ("BSEE").  Specifically, Plaintiffs the People of the State of California and the California Coastal Commission claim that the PEA and FONSI violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370h, the Coastal Zone Management Act, 16 U.S.C. §§ 1451-66 ("CZMA"), and the Administrative Procedure Act, 5 U.S.C. §§ 551-559, 701-706 ("APA").  Plaintiffs ask this Court to declare that the PEA and FONSI violate NEPA, the CZMA, and the APA, vacate the PEA and FONSI, and "[i]ssue a mandatory injunction prohibiting Defendants from issuing approvals for offshore [well stimulation treatments] on the Pacific OCS unless and until Defendants comply with NEPA, the CZMA, and the APA."  Compl. For Declaratory & Injunctive Relief, Prayer for Relief ¶ 4, R. Doc. 1.

ExxonMobil is entitled to intervene in this action as a matter of right. Indeed, this Court granted ExxonMobil's intervention in a related case brought by the Environmental Defense Center ("EDC") which was the direct precursor to the present case and in which, like the present case, the plaintiff sought to enjoin the use of well stimulation activities on the Pacific Outer Continental Shelf ("OCS"). ExxonMobil has a significant and direct stake in the present litigation because Plaintiffs' requested relief of enjoining the issuance of permits that authorize well stimulation activities would severely restrict ExxonMobil's ability to further

1  develop its existing Pacific OCS leases.  Further, ExxonMobil has future

2  exploration and development plans for its substantial investments in offshore leases

3  in the Pacific OCS that potentially involve stimulation of new and existing wells.

4  Thus, ExxonMobil is directly affected by the Plaintiffs' case, which seeks to enjoin

5  offshore activities involving well stimulation methods until the federal Defendants

6  undertake further action pursuant to NEPA and the CZMA.  Because neither the

7  federal Defendants nor any other party may adequately represent ExxonMobil's

8  direct economic interests, ExxonMobil's timely motion to intervene as a matter of

9  right should be granted under Rule 24(a) of the Federal Rules of Civil Procedure.

10  Alternatively, the Court should exercise its discretion to grant ExxonMobil

11  permission to intervene pursuant to Rule 24(b).  If this motion is not granted,

12  ExxonMobil would be denied the opportunity to be heard in an action where its

13  economic interests are directly threatened.

14  ## II.  BACKGROUND AND PROCEDURAL HISTORY

15  ExxonMobil is a long-standing and active participant in oil and gas

16  exploration and development activities in the Pacific OCS Region.  *See* Declaration

17  of Ken Dowd in Support of Exxon Mobil Corporation's Motion for Leave to

18  Intervene ¶ 3 ("Dowd Decl.").  ExxonMobil operates the Santa Ynez Unit located

19  off the coast of California in the Santa Barbara Channel.  Dowd Decl. ¶ 4.  The

20  Santa Ynez Unit was formed in 1970 and currently contains 16 OCS leases, all of

21  which are 100% owned by ExxonMobil.  Dowd Decl. ¶ 5.  ExxonMobil conducts

22  its activities in the Santa Ynez Unit from three platforms:  the Heritage Platform,

23  the Harmony Platform, and the Hondo Platform.  Dowd Decl. ¶ 6.  Oil production

24  at the Heritage, Harmony, and Hondo Platforms is currently suspended due to a

25  third party's May 2015 pipeline rupture in Santa Barbara County, California.

26  Dowd Decl. ¶ 13.  The ruptured pipeline currently serves as the transport route for

27  oil produced at ExxonMobil's SYU Platforms.  Dowd Decl. ¶ 13.  ExxonMobil

28  continues to evaluate options for restoring production operations.  Dowd Decl. ¶ 13.

NOT. OF MOT. & MOT. FOR LEAVE TO
INTERVENE; MEM. P. & A.
CASE NO. 2:16-CV-09352-PSG-FFMx

On December 3, 2014, EDC filed a lawsuit challenging BSEE's decision to approve certain Applications for Permits to Drill ("APDs") and Applications for Permits to Modify ("APMs") associated with oil and gas production activities from offshore platforms located off California's coastline in the Pacific OCS Region. *Environmental Defense Center v. Bureau of Safety and Environmental Enforcement, et al.* (C.D. Cal. Case No. 2:14-cv-09281-PSG-FFM) (hereinafter "*EDC I*"). Specifically, EDC claimed that BSEE's approval of the APDs and APMs in question violated NEPA and the APA. EDC asked the Court to declare the federal Defendants in violation of NEPA and enjoin both "further implement[ation] [of] the APDs and APMs for each and every one of the 51 approvals at issue in this action" and "all pending and future APDs and APMs authorizing offshore well stimulation, until and unless Defendant BSEE complies with NEPA…." *EDC I*, No. 2:14-cv-09281-PSG-FFM (C.D. Cal. Dec. 3, 2014), Compl. for Declaratory and Injunctive Relief, Relief Requested ¶ D, R. Doc. 1.

On February 18, 2015, ExxonMobil moved to intervene in *EDC I*. The basis for ExxonMobil's intervention was that ExxonMobil was the holder of 29 of the 51 permits challenged by EDC and that ExxonMobil had future exploration and development plans for its substantial investments in offshore leases in the Pacific region that potentially involved well stimulation. *EDC I*, 2:14-cv-09281-PSG-FFM (C.D. Cal. Feb. 18, 2015), Not. of Mot. & Mot. for Leave to Intervene, Mem. of P. & A. at 1, R. 19. Thus, ExxonMobil was directly affected by EDC's case, which sought to enjoin both the challenged, existing APDs and APMs offshore California and all pending and future offshore plans involving well stimulation methods. *EDC I*, No. 2:14-cv-09281-PSG-FFM (C.D. Cal. Dec. 3, 2014), Compl. for Declaratory and Injunctive Relief, Relief Requested ¶ D, R. Doc. 1. By Order dated April 2, 2015, this Court granted ExxonMobil's Motion to Intervene concluding that ExxonMobil had a significantly protectable interest related to the litigation, which interest would be impaired as a result of the litigation. *EDC I*, No. 2:14-cv-09281-

NOT. OF MOT. & MOT. FOR LEAVE TO
INTERVENE; MEM. P. & A.
CASE NO. 2:16-CV-09352-PSG-FFMx

1  PSG-FFM (C.D. Cal. April 2, 2015), Order Granting Mot. to Intervene at 4, R. 34
2  (attached hereto as Exhibit A-1).[1]

3      On January 29, 2016, EDC and the federal Defendants moved to dismiss
4  *EDC I* on the basis that EDC and the federal Defendants had entered into a
5  settlement agreement which resolved the issues underlying the case.  *EDC I*, No.
6  2:14-cv-09281-PSG-FFM (C.D. Cal. Jan. 29, 2016), Motion to Dismiss, R. 79.
7  ExxonMobil was not a party to the settlement agreement and took position
8  regarding the dismissal of *EDC I*.  Under the terms of the settlement agreement,
9  BOEM and BSEE agreed to prepare by May 28, 2016 a programmatic
10  Environmental Assessment pursuant to NEPA to analyze the potential
11  environmental impacts of certain well-stimulation practices on the Pacific OCS,
12  including hydraulic fracturing and acid well stimulation.  *EDC I*, No. 2:14-cv-
13  09281-PSG-FFM (C.D. Cal. Jan. 29, 2016), Settlement Agreement at 2, R. 79-1.  In
14  addition, BSEE agreed to withhold approval of future APDs and APMs involving
15  hydraulic fracturing operations or acid well stimulation on the Pacific OCS pending
16  the completion of the final programmatic EA.  *Id.* at 3.

17      On May 27, 2016, BOEM and BSEE issued the PEA.  Based on the analysis
18  in the PEA, BOEM and BSEE also issued the FONSI concluding that the use of
19  well stimulation treatments would not cause any significant impacts.

20      On November 11, 2016, EDC and Santa Barbara Channelkeeper filed a
21  lawsuit alleging that the PEA and FONSI violated NEPA and the ESA and seeking
22  to "[e]njoin Defendants from issuing Permits (to Drill or to Modify) for well
23  stimulation treatments, until and unless Defendants comply with" NEPA and the
24  ESA.  *Environmental Defense Center v. BOEM*, No. 2:16-cv-8418 (C.D. Cal. Nov.
25  11, 2016), Compl. For Declaratory & Injunction Relief, Relief Requested ¶¶ C, G,

26

27  [1]      For the Court's convenience, ExxonMobil has attached true and correct
28  copies of all of the unpublished orders cited herein as Exhibits A-1 to A-8 hereto.

                                        NOT. OF MOT. & MOT. FOR LEAVE TO
                                            INTERVENE; MEM. P. & A.
                                        CASE NO. 2:16-CV-09352-PSG-FFMx

R. Doc. 1.  On November 15, 2016, the Center for Biological Diversity and the Wishtoyo Foundation filed a similar lawsuit alleging that the PEA and FONSI violated NEPA and the ESA and seeking to "[p]rohibit the Bureaus from authorizing offshore fracking and other well stimulation practices unless and until the Bureaus comply with NEPA and the ESA."  *Center for Biological Diversity v. Bureau of Ocean Energy Management*, No. 2:16-cv-8473-PSG-FFM (C.D. Cal. Nov. 15, 2016), Compl. For Declaratory & Other Relief, Prayer for Relief ¶ 4, R. Doc. 1.  Then on December 19, 2016, the People of the State of California and the California Coastal Commission filed the above-captioned lawsuit challenging the PEA and FONSI based on NEPA and the CZMA and requesting that the Court "[i]ssue a mandatory injunction prohibiting Defendants from issuing approvals for offshore [well stimulation treatments] on the Pacific OCS unless and until Defendants comply with NEPA, the CZMA, and the APA."  Compl. For Declaratory & Injunctive Relief, Prayer for Relief ¶ 3, R. Doc. 1.

ExxonMobil will be directly impacted by the efforts of Plaintiffs the People of the State of California and the California Coastal Commission to enjoin the issuance of permits authorizing well stimulation activities in the Pacific OCS. Thus, ExxonMobil has a right to intervene in this case.

## III.   LEGAL ARGUMENT

### A.   ExxonMobil Satisfies the Criteria for Intervention as of Right.

ExxonMobil is entitled to intervene in this proceeding as a matter of right, pursuant to Fed. Rule Civ. P. 24(a), which provides, in pertinent part:

> On timely motion, the court must permit anyone to intervene who…(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Ninth Circuit has held that, pursuant to Rule 24, the qualification for

intervention as a matter of right depends on four factors: (1) whether the party has a significant, protectable interest relating to the subject of the litigation; (2) whether an interest of the party seeking intervention will be practically impaired if intervention is not granted; (3) whether the party's interest is adequately represented by the parties to the action; and (4) the timeliness of the motion. *Wilderness Society v. United States Forest Service*, 630 F.3d 1173, 1177 (9th Cir. 2011)[2] (en banc); *Citizens for Balanced Use v. Mont. Wilderness Association*, 647 F.3d 893, 897 (9th Cir. 2011); *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996) (citations omitted). The Ninth Circuit generally construes this test broadly in favor of intervention. *Citizens for Balanced Use*, 647 F.3d at 897 ("In addition to mandating broad construction, our review is guided primarily by practical considerations, not technical distinctions.") (citations omitted); *see also United States v. City of L.A.*, 288 F.3d 391, 397-98 (9th Cir. 2002) ("A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.") (citations omitted). ExxonMobil satisfies each of the four factors required for intervention as a matter of right. Indeed, this Court granted ExxonMobil's intervention in *EDC I*, which was the direct precursor to the present case and in which, like the present case, the plaintiff sought to enjoin the use of well stimulation treatments on the Pacific OCS. *EDC I*, No. 2:14-cv-09281-PSG-FFM (C.D. Cal. April 2, 2015), Order Granting Mot. to Intervene, R. 34. ExxonMobil's interests in the present suit are substantially similar to the interests in *EDC I*. Thus, ExxonMobil should be entitled to intervene in this matter.

---

[2] In *Wilderness Society*, the Ninth Circuit reversed its prior rule that private parties could not intervene as of right on behalf of the government in the liability phase of NEPA cases. 630 F.3d at 1180.

NOT. OF MOT. & MOT. FOR LEAVE TO
INTERVENE; MEM. P. & A.
CASE NO. 2:16-CV-09352-PSG-FFMx

### 1. ExxonMobil Has a Significant, Protectable Interest in the Litigation.

As to the first factor, "[w]hether an applicant for intervention as of right demonstrates sufficient interest in an action is a 'practical, threshold inquiry' and '[n]o specific legal or equitable interest need be established.'" *Citizens for Balanced Use*, 647 F.3d at 897 (citation omitted). In the Ninth Circuit, the "operative inquiry should be whether 'the interest is protectable under some law' and whether 'there is a relationship between the legally protected interest and the claims at issue.'" *Wilderness Soc'y*, 630 F.3d at 1180 (citations omitted). Accordingly, "[a] putative intervenor will generally demonstrate a sufficient interest for intervention of right in a NEPA action, as in all cases, if 'it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Id*. at 1180-81 (citing *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)); *City of L.A.*, 288 F.3d at 397-98 ("By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time we allow an additional interested party to express its views before the court.").

The Ninth Circuit has also clarified that "a prospective intervenor's asserted interest need not be protected by the statute under which the litigation is brought to qualify as 'significantly protectable' under Rule 24(a)(2)." *Wilderness Soc'y*, 630 F.3d at 1179 (citation omitted). Rather, an interest sufficient to support intervention exists where the resolution of the plaintiffs' claim will affect the applicant. *City of L.A.*, 288 F.3d at 398 (relationship requirement is met where "resolution of the plaintiff's claims actually will affect the applicant").

ExxonMobil has a substantial, personal financial interest in the subject matter of this ongoing litigation. ExxonMobil has invested significant resources in acquiring, exploring, and developing the lease interests that make up the Santa Ynez Unit and in installing and operating the Heritage, Harmony, and Hondo

1   Platforms.  Dowd Decl. ¶ 10.  Further, in order to re-start production at these

2   Platforms, ExxonMobil anticipates that it will require the use of certain well

3   stimulation treatments at one or more wells.  Moreover, ExxonMobil will require

4   acid well stimulation treatments to drill and complete new wells and recomplete

5   existing wells in the Santa Ynez Unit.  Dowd Decl. ¶ 14.

6        Plaintiffs are seeking to "[i]ssue a mandatory injunction prohibiting

7   Defendants from issuing approvals for offshore [well stimulation treatments] on the

8   Pacific OCS unless and until Defendants comply with NEPA, the CZMA, and the

9   APA."  Compl. For Declaratory & Injunctive Relief, Prayer for Relief ¶ 3, R. Doc.

10  1.  Were the Plaintiff in this litigation to prevail and to obtain the injunctions they

11  have requested, such injunctive relief would have a significant and direct effect on

12  ExxonMobil's property, regulatory, and economic interests in its Santa Ynez Unit

13  leases and permits.  In particular, the requested relief could restrict ExxonMobil's

14  ability to restart oil production at the Heritage, Harmony, and Hondo Platforms.  It

15  would also severely restrict ExxonMobil's plans to further develop its existing

16  Pacific OCS leases.   Dowd Decl. ¶ 16.

17       Although Governmental agencies and officials are named as the Defendants

18  in this case, because the "disposition of this action may, as a practical matter,

19  impair or impede" ExxonMobil's ability to protect its financial interests in its

20  operations, ExxonMobil should "as a general rule, be entitled to intervene."

21  *Citizens for Balanced Use*, 647 F.3d at 898.  Allowing ExxonMobil to intervene in

22  this litigation would "serve[] both efficient resolution of issues and broadened

23  access to the courts" and could "prevent or simplify future litigation involving

24  related issues."  *City of L.A.*, 288 F.3d at 397-98.  Thus, ExxonMobil has shown

25  that it meets the first criterion for intervention as a matter of right.

26           **2.     ExxonMobil's Interests Will Be Impaired If Intervention Is
               Denied.**

27

28  Once a court has found that a prospective intervenor has a significant

8

protectable interest, it should have "little difficulty concluding that the disposition of [the] case may, as a practical matter, affect it." *Citizens for Balanced Use*, 647 F.3d at 898 (citing *Lockyer*, 450 F.3d at 442). Here, ExxonMobil's interests would be impaired if it is not allowed to intervene in this litigation. As explained above, the injunction the Plaintiffs seek would have a significant detrimental impact on ExxonMobil's interests in its Santa Ynez Unit leases as such relief could restrict ExxonMobil's ability to restart oil production at the Heritage, Harmony, and Hondo Platforms and would also severely restrict ExxonMobil's plans to further develop its existing Pacific OCS leases. Dowd Decl. ¶ 16. At a minimum, any moratorium on the issuance of permits for well stimulation treatments would substantially and indeterminately delay ExxonMobil's production activities, resulting in increased costs in producing crude oil in the Santa Ynez Unit which could potentially impede the development of the Santa Ynez Unit and undermine ExxonMobil's lease interests. Dowd Decl. ¶ 17. Further, the requested injunction could result in significant sums in wasted investments and lost production opportunities. Dowd Decl. ¶ 18.

In addition, ExxonMobil currently intends to continue to invest substantially in its Santa Ynez Unit leases in the future. In the ordinary course of its operations, ExxonMobil will continue to evaluate and generate new opportunities to develop the Santa Ynez Unit leases including but not limited to the drilling of new wells and stimulation of new and existing wells. Dowd Decl. ¶ 19. These activities would require that ExxonMobil obtain additional APDs and APMs. Any legal action that would result in an injunction prohibiting the issuance of APDs and APMs would directly impact these activities. Dowd Decl. ¶ 19.[3]

---

[3] Indeed, because any subsequent lawsuit filed by ExxonMobil to restore the status quo "would be constrained by the *stare decisis* effect of" the present lawsuit, intervention is further supported in this case. *See Sierra Club v. EPA*, 995 F.2d

NOT. OF MOT. & MOT. FOR LEAVE TO
INTERVENE; MEM. P. & A.
CASE NO. 2:16-CV-09352-PSG-FFMx

Recognizing the risk of impairment to individual companies' interests, courts in the Ninth Circuit and elsewhere have frequently permitted oil and gas companies to intervene in litigation challenging government agency actions in the OCSLA oil and gas exploration and development process.  *See EDC I*, No. 2:14-cv-09281-PSG-FFM (C.D. Cal. April 2, 2015), Order Granting Mot. to Intervene at 5, R. 34. (finding that the relief sought, which included an injunction prohibiting issuance of APDs and APMs for well stimulation treatment, "would undoubtedly have a significant detrimental impact on Exxon's interests in its Santa Ynez Unit leases and permits") (citations omitted); *Native Vill. of Point Hope v. Salazar*, Case No. 09-73942, Doc. 41 (9th Cir. Mar. 2, 2010) (attached hereto as Exhibit A-2) (Shell granted leave to intervene in lawsuit challenging Interior's approval of Shell's exploration plan); *Native Vill. of Chickaloon v. NMFS*, Case No. 12-102, Docs. 29, 43 (D. Alaska Aug. 3, 2012, Aug. 24, 2012) (attached hereto as Exhibit A-3) (API and Apache granted leave to intervene in lawsuit challenging the National Marine Fisheries Service's approval of Incidental Harassment Authorization in connection with Apache's seismic operations); *Native Vill. of Point Hope v. Kempthorne*, Case No. 08-00004, Doc. 28 (D. Alaska Apr. 18, 2008) (attached hereto as Exhibit A-4 ) (ConocoPhillips and Shell granted leave to intervene in lawsuit challenging Interior's approval of Chukchi Sea Lease Sale 193); *Oceana v. BOEM*, Case No. 12-981, Docs. 10, 26, 38 (D.D.C. Sept. 13, 2012, Oct. 22, 2012, Dec. 4, 2012) (attached hereto as Exhibit A-5) (API, Statoil, Apache, ExxonMobil, and

---

1478, 1486 (9th Cir. 1993), *abrogated on other grounds, Wilderness Soc'y, supra*; *see also Conservation Law Found. of New England v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992) (granting fishing group right to intervene and defend lawsuit seeking to force government to change regulatory status quo, when "changes in the rules will affect the proposed intervenors' businesses, both immediately and in the future") (citation omitted).

ConocoPhillips granted leave to intervene in lawsuit challenging Interior's approval of Gulf of Mexico Lease Sales 218 and 216/222); *Defenders of Wildlife v. Bureau of Ocean Energy Mgmt., Regulation, & Enforcement*, Case No. 10-0254, Docs. 31, 67, 95, 109 (S.D. Ala. Aug. 9, 2010, Dec. 9, 2010, June 22, 2011, Sept. 27, 2011) (attached hereto as Exhibit A-6) (API, Chevron, Anadarko, and Apache granted leave to intervene in lawsuit challenging Interior's approval of Gulf of Mexico Lease Sale 213).

### 3.   The Existing Parties Do Not Adequately Represent ExxonMobil's Interests.

The burden of demonstrating inadequate representation is minimal. ExxonMobil need only show that its interests are sufficiently different from the existing parties such that their representation "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Smith v. Los Angeles Unified School District*, 830 F.3d 843, 864 (9th Cir. 2016) (citing *Trbovich*); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (citing *Trbovich*). Specifically, the Ninth Circuit weighs three factors: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted).

In the present case, ExxonMobil and the federal Defendants do not "have the same ultimate objective" regarding the Plaintiffs' claims; therefore, no presumption of adequacy of representation exists. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996). The interests of ExxonMobil as a non-federal entity with a direct economic stake in the controversy are very different from the interests of the federal regulatory agencies. Although ExxonMobil and the federal Defendants share certain common goals, such partial overlap of interests does not

1    guarantee that ExxonMobil's interests will be adequately represented.  Courts have

2    frequently held that when parties such as ExxonMobil have private interests, as

3    opposed to the government's interest in protecting the public in general,

4    intervention by the private party is proper.  As the Ninth Circuit noted in *Citizens*

5    *for Balanced Use*, *supra,* the government's representation of the public interest may

6    not be "'identical to the individual parochial interest' of a particular group just

7    because 'both entities occupy the same posture in the litigation.'"  647 F.3d at 899,

8    quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir.

9    2009).

10        Other courts have specifically recognized that the "government represents

11   numerous complex and conflicting interests" in NEPA cases, holding "[t]he

12   straightforward business interests asserted by intervenors here may become lost in

13   the thicket of sometimes inconsistent governmental policies" thus raising the

14   specter of inadequate representation.  *See Kleissler v. U.S. Forest Serv.*, 157 F.3d

15   964, 973-74 (3d Cir. 1998) (granting timber companies' right to intervene in action

16   aimed at halting logging activities); *see also Snowlands Network v. United States*

17   *Forest Service*, 2012 WL 4755161, at *3 (E.D. Cal. Oct. 4, 2012) ("Defendant is a

18   regulatory agency charged with making decisions for the benefit of the entire

19   population.  As a result, Applicants necessarily set forth more specific goals and

20   objectives than the much broader interests that Defendant must take into account.")

21   (permitting intervention as a matter of right by several individuals and associations

22   interested in snowmobile sales and recreational snowmobile use in action alleging

23   Forest Service failed to adequately analyze environmental impact of Over Snow

24   Vehicle Program); *Bark v. Northrup*, 2013 WL 6576306, at *6 (D. Or. Dec. 12,

25   2013) ("As this case advances, circumstances may well arise in which the Forest

26   Service['s] public interest will conflict with [Intervenor's] economic interest.")

27   (granting timber company's right to intervene in action seeking to enjoin timber

28   sales in Mt. Hood forest for NEPA and other statutory violations).

NOT. OF MOT. & MOT. FOR LEAVE TO
INTERVENE; MEM. P. & A.
CASE NO. 2:16-CV-09352-PSG-FFMx

1    Similarly here, although the government Defendants have an interest in

2 defending the legality of the environmental reviews being challenged, they also

3 have a variety of broader public obligations.  It is not evident that the current

4 Defendants will "undoubtedly" make all of the arguments that ExxonMobil will

5 advance to protect its narrower, personal financial interest in protecting its lease

6 interests in the Pacific OCS.  The Defendant government entities do not have

7 sufficient knowledge of ExxonMobil's interests and practices to adequately

8 represent ExxonMobil's interests.  Given the minimal burden, and the federal

9 Defendants' broad public focus, ExxonMobil is currently not adequately

10 represented in the litigation.  *See also John Doe #1 v. Glickman*, 256 F.3d 371, 381

11 (5th Cir. 2001) (granting intervention).

12    Highlighting the importance of this matter for the petroleum industry and

13 related businesses, the American Petroleum Institute ("API") has moved to

14 intervene in this matter.  API is a trade association that has more than 600 member

15 companies from all areas of the oil and natural gas industry.  Decl. of Stephanie

16 Meadows in Supp. of the Mot. to Intervene of the American Petroleum Institute at ¶

17 1, R. 13-1 ("Meadows Decl.").  These members include pipeline operators, marine

18 transportation companies, and service and supply companies as well as oil and gas

19 producers such as ExxonMobil.  Each of the API member companies has a different

20 set of unique interests in offshore oil and gas leasing.  Further, ExxonMobil's

21 ultimate objective – assuring that it can use well stimulation treatments to develop

22 its individual lease interests on the Pacific OCS – differs from the more general,

23 industry-wide objectives that may drive API's intervention.  *See Nw. Forest*, *supra*,

24 82 F.3d at 838.[4]  Given the diverse set of interests, if API's motion to intervene is

---

26 [4] In addition, ExxonMobil's specific, personal financial interest in the broader

27 injunctive relief Plaintiffs seek is substantially greater than many of the other API

28 members.  Unlike ExxonMobil, which is a major offshore operator on the Pacific

NOT. OF MOT. & MOT. FOR LEAVE TO
INTERVENE; MEM. P. & A.
CASE NO. 2:16-CV-09352-PSG-FFMx

granted (which ExxonMobil supports), API's representation of ExxonMobil's specific financial interests in its leases "may be inadequate."[5]

Recognizing this distinction, courts, including this Court in *EDC I*, have routinely allowed individual member companies to intervene along with trade associations in cases similar to this case.  *See EDC I*, No. 2:14-cv-09281-PSG-FFM (C.D. Cal. April 2, 2015), Order Granting Mot. to Intervene, R. 34. (granting intervention by ExxonMobil and API in the direct precursor to the present case)*; Gulf Restoration Network v. Salazar*, Case No. 10-60411 (5th Cir. July 1, 2010) (attached hereto as Exhibit A-7) (Chevron and API granted leave to intervene in lawsuit challenging Interior's approval of Chevron's exploration plan); *Native Vill. of Chickaloon v. NMFS*, Case No. 12-102, *supra*, (API and Apache granted leave to intervene in lawsuit challenging the National Marine Fisheries Service's approval of Incidental Harassment Authorization in connection with Apache's seismic operations); *Oceana v. BOEM*, Case No. 12-981, *supra*  (individual companies and various industry groups granted leave to intervene in lawsuit challenging Interior's approval of Gulf of Mexico Lease Sales 218 and 216/222); *Defenders of Wildlife*, Case No. 10-0254, *supra* (individual companies and various industry groups granted leave to intervene in lawsuit challenging Interior's approval of Gulf of Mexico Lease Sale 213); *Ctr. for Biological Diversity v. Salazar*, Case No. 10-816, Docs. 17, 43 (D.D.C. July 22, 2010, Nov. 2, 2010) (attached hereto as Exhibit A-8) (Chevron, API, Independent Petroleum Association of America, U.S. Oil & Gas Association, and International Association of Drilling Contractors granted leave to

---

OCS and elsewhere, many API members have no offshore leases, or very few offshore leases.  Moreover, ExxonMobil is just one of the more than 600 member companies of API.  *See* Meadows Decl. ¶ 1.

[5] ExxonMobil's Proposed Answer also raises additional affirmative defenses not asserted by API.

NOT. OF MOT. & MOT. FOR LEAVE TO
INTERVENE; MEM. P. & A.
CASE NO. 2:16-CV-09352-PSG-FFMx

1    intervene).[6]

2         Thus, ExxonMobil meets the "minimal" burden of showing that its interests

3    are not adequately represented by the parties.

4              **4.    ExxonMobil's Motion for Intervention Is Timely.**

5         Finally, ExxonMobil's motion to intervene is timely.  To determine whether

6    a motion to intervene is timely, the Ninth Circuit considers three factors: (1) the

7    stage of the proceedings at which an applicant seeks to intervene; (2) the prejudice

8    to other parties; and (3) the reason for and length of delay.  *Washington,* 86 F.3d at

9    1503.  ExxonMobil meets the requirements for timely intervention.  This motion to

10   intervene is filed less than two months after the Plaintiffs filed their Complaint and

11   before the Defendants filed responsive pleadings.  *See Citizens for Balanced Use*,

12   647 F.3d at 897 (noting that motion to intervene was timely where filed "less than

13   three months after the complaint was filed and less than two weeks after the

14   [government defendant] filed its answer to the complaint").  Further, the

15   administrative record has not yet been submitted to this Court, and no substantive

16   briefing on the merits of the case has occurred.  Thus, because this case is in a very

17   early stage, the parties will not be prejudiced by ExxonMobil's intervention.  *See*

18   *EDC I*, No. 2:14-cv-09281-PSG-FFM (C.D. Cal. April 2, 2015), Order Granting

19   Mot. to Intervene at 5, R. 34 (granting intervention where case was in the early

20   stage of litigation; no substantive briefing on the merits had been submitted; and the

21   _____

22   [6] In other contexts, courts in the Ninth Circuit have similarly allowed both

23   associations and individual parties to intervene.  *See, e.g.*, *Nev. Ass'n of Counties v.*

24   *U.S. Dep't of the Interior*, 2014 WL 1338736, at *7 (D. Nev. Apr. 2, 2014)

25   ("Intervention should not be limited to one or the other of the movants.  While the

26   parties acknowledge some overlap in the . . . interests advanced, each of the persons

27   or organizations seeking to intervene has adequately described their own unique

28   interests that would not be adequately represented by the other.").

NOT. OF MOT. & MOT. FOR LEAVE TO
                                                   INTERVENE; MEM. P. & A.
                                                   CASE NO. 2:16-CV-09352-PSG-FFMx

1    scheduling conference had not occurred).  Finally, there is no delay caused by the

2    timing of ExxonMobil's intervention.  Accordingly, ExxonMobil's motion to

3    intervene is timely.

4    **B.    In the Alternative, ExxonMobil Should Be Permitted to Intervene**
     **Pursuant to Federal Rule of Civil Procedure 24(b).**

5

6          In the event that this Court finds that ExxonMobil is not entitled to intervene

7    as a matter of right, ExxonMobil should still be entitled to permissive intervention

8    under Fed. R. Civ. P. 24(b) which provides, in pertinent part:

9          On timely motion, the court may permit anyone to intervene who…(B)

10         has a claim or defense that shares with the main action a common

11         question of law or fact.

12         ExxonMobil's defenses and the allegations in the Plaintiffs' Complaint

13   clearly involve common questions of law, including the standards imposed by

14   NEPA, the CZMA, and the APA, and common facts, including the government's

15   fulfillment of its obligations under the statutes upon which the Complaint relies.

16   Central to both the Plaintiffs' allegations and ExxonMobil's defenses are the facts

17   surrounding the PEA and FONSI and the extent to which those environmental

18   reviews satisfy applicable federal law.

19         Finally, as explained above, ExxonMobil's motion to intervene is filed less

20   than two months after the Plaintiffs filed their Complaint, and no substantive

21   briefing on the merits of the case has occurred.  Given the early stage of the

22   litigation, ExxonMobil's intervention will not unduly delay or prejudice the

23   adjudication of the rights of the original parties.  Given ExxonMobil's direct

24   financial interest in the outcome of the dispute, its alternative motion for permissive

25   intervention at this early stage in the case is particularly justified.  *See, e.g.*, *City of

26   L.A.*, 288 F.3d at 404 (remanding to district court to reconsider request for

27   permissive intervention by police league and community intervenors who "have

28   some of the strongest interests in the outcome").  In an analogous NEPA challenge

NOT. OF MOT. & MOT. FOR LEAVE TO
INTERVENE; MEM. P. & A.
CASE NO. 2:16-CV-09352-PSG-FFMx

to BLM leases, despite its "doubt" as to whether an oil and gas company's interests diverged sufficiently from the BLM to warrant mandatory intervention, the district court granted a motion for permissive intervention, noting:

> Regardless of how they may be conceived and described, Williams possesses interests in leases it has obtained as a result of the November 2005 lease sale, and matters relating to the legality of the decision reached by the BLM that resulted in the sale of those leases clearly share common questions of law and fact with the Plaintiffs' claims. Moreover, allowing Williams to intervene will not unduly affect the rights of the Plaintiffs and Defendants, as all sides have had a full opportunity to review and respond to Williams' arguments.

*Wilderness Soc'y v. Wisely*, 524 F. Supp. 2d 1285, 1294 (D. Colo. 2007).

Accordingly, if intervention by matter of right is denied, it would nevertheless be appropriate for this Court to grant ExxonMobil's request for permissive intervention.

## IV.   **CONCLUSION**

ExxonMobil is entitled to intervene in the above-captioned litigation as a matter of right.  ExxonMobil has invested significant resources in exploration and development in OCS leases and, therefore, possesses a cognizable interest in this lawsuit.   There can be no question that ExxonMobil's property, regulatory, and financial interests may be impaired or impeded as a result of this litigation.  Further, ExxonMobil's interests may not be adequately protected by the Plaintiffs or the Defendants.  Finally, ExxonMobil has timely filed its motion.  In the alternative, ExxonMobil should be permitted to intervene because its defenses share common questions of law and fact with Plaintiffs' allegations and because this motion is timely filed and will not delay resolution of this case.

1    DATED:  February 8, 2017.

2                                                        Respectfully submitted,

3                                                        M. RANDALL OPPENHEIMER
                                                         DAWN SESTITO
4                                                        O'MELVENY & MYERS LLP

5                                                        /s/ Dawn Sestito
                                                              Dawn Sestito
6                                                        **Attorneys for Exxon Mobil Corporation**

7    **Pro Hac Vice Application Forthcoming:**
     Jonathan A. Hunter
8    Stephen W. Wiegand
     Carson M. Haddow
9    Liskow & Lewis
     701 Poydras Street, 50th Floor
10   New Orleans, LA 70139
     Telephone:  (504) 556-4131
11   Facsimile:    (504) 556-4108

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28